Eric Baum #2591618 (Pro Hac Vice To Be Filed)
Andrew Rozynski #5054465 (Pro Hac Vice To Be Filed)
**EISENBERG & BAUM, LLP**
24 Union Square East, Fourth Floor
New York, NY 10003
Telephone No. 212-353-8700
Facsimile No. 212-353-1708
E-mail: ebaum@EandBLaw.com
          arozynski@EandBLaw.com

William A. Richards #013381
Alan S. Baskin #013155
David E. Wood #021403
**BASKIN RICHARDS PLC**
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone No. 602-812-7979
Facsímile No. 602-595-7800
E-mail:  brichards@baskinrichards.com
          alan@baskinrichards.com
          dwood@baskinrichards.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Tauscher and Ivanito Tauscher, a married couple,<br><br>Plaintiffs,<br><br>v.<br><br>Vanguard Health Management, Inc. d/b/a Abrazo Community Health Network; Hospital Development of West Phoenix, Inc. d/b/a Abrazo West Campus,<br><br>Defendants. | **Case No.**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, Mark Tauscher and Ivanito Tauscher ("Plaintiffs"), by and through their undersigned counsel, Eisenberg & Baum, LLP, and Baskin Richards PLC, hereby assert the

following claims against Defendants, Abrazo Community Health Network and Abrazo West Campus ("Defendants"), and in support of their claims and demands for relief allege as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiffs Mark Tauscher and Ivanito Tauscher ("Plaintiffs") are deaf individuals who communicate primarily in American Sign Language ("ASL"), which is their expressed, preferred, and most effective means of communication. Defendants, Abrazo Community Health Network and Abrazo West Campus discriminated against Plaintiffs by refusing and failing to provide effective auxiliary aids and services despite the Plaintiffs' repeated requests for effective communication. Defendants discriminated against Plaintiffs by failing to provide the auxiliary aids and services necessary for Plaintiffs to effectively communicate; Defendants failed to provide on-site ASL interpreters when necessary, provided malfunctioning Video Remote Interpreting ("VRI"[1]) systems, failed to adequately train its personnel in the use of VRI systems, and required the Plaintiffs to rely upon other means of communication, including passing of notes and/or lip reading, that were ineffective for communication regarding the medical treatment required by Plaintiff Mark Tauscher and the services required by his companion and spouse, Plaintiff Ivanito Tauscher. Plaintiffs bring this action to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment of, and a meaningful opportunity on the part of Plaintiffs and other deaf individuals to participate in and benefit from Defendants' services. Plaintiffs seek declaratory, injunctive, and equitable relief; damages; and attorneys' fees and costs to redress Defendants' unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.* and its implementing regulation, 28 C.F.R. Part 36; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulation, 45 C.F.R. Part 84; Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 148116; the

---

[1] Video remote interpreting is a video telecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

Arizonans with Disabilities Act ("AzDA"), A.R.S. § 41-1492, *et seq.*; and any other applicable common law rights.

2.      Due to physical, environmental, and pedagogical factors, many deaf individuals, including Plaintiffs, have difficulty acquiring English. Indeed, the median reading level of deaf high school graduates is fourth grade. This is because English is generally a second language (after ASL or another form of sign language) for individuals who are born deaf or become deaf before acquiring language. In addition, many deaf people acquire English as their second language later in life, and well past the critical developmental period of language acquisition. Despite this, Defendants often forced Plaintiffs to communicate in a medical setting using this unreliable and ineffective method, instead of properly accommodating their disability through qualified ASL interpreters.

3.      Lip-reading, the ability to understand the speech of another by watching the speaker's lips, does not provide effective communication for most deaf and hard of hearing individuals. In fact, the upper limits of estimates for accuracy in lip-reading, in an ideal one-on-one situation, have been as low as getting only 10% to 30% of words correct. This is because only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language or the speaker's vocabulary, because many deaf individuals, including Plaintiffs, have difficulty acquiring and communicating in English. Despite this, Defendants forced Plaintiffs at times to communicate in a medical setting using this unreliable and ineffective method, instead of properly accommodating their disabilities through qualified ASL interpreters.

4.      Video Remote Interpreting (VRI) is a videotelecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter. VRI is inappropriate in many circumstances, including when the deaf user has other conditions that impair the deaf user's ability to utilize the device (i.e., if the deaf user has a visual impairment, is in a lot of pain, or cannot achieve the proper posture); when there are many people in a room; when staff is

3

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

inadequately trained to set up or operate the device; or in situations that are especially complicated or emergent. Despite this, Defendants forced Plaintiffs to utilize a nonfunctioning VRI, or to use VRI when it was not appropriate to do so, instead of properly accommodating Plaintiffs' disabilities.

## THE PARTIES

5.      Defendant Vanguard Health Management, Inc. d/b/a Abrazo Community Health Network is, on information and belief, a corporation registered and doing business in the State of Arizona. At all times hereinafter mentioned, Vanguard Health Management, Inc. d/b/a Abrazo Community Health Network was and still is licensed and doing business in the State of Arizona, with a domestic address in Phoenix, Arizona and a foreign address in Dallas, Texas.

6.      On information and belief, Vanguard Health Management, Inc. d/b/a Abrazo Community Health Network owns, leases, and/or operates hospitals, specialty medical centers, surgery centers and urgent care facilities, including Abrazo West Campus, located at or near 13677 W. McDowell Rd., Goodyear, Arizona 85395.

7.      Defendant Hospital Development of West Phoenix, Inc. d/b/a Abrazo West Campus is, on information and belief, a corporation registered and doing business in the State of Arizona.  At all times hereinafter mentioned, Hospital Development of West Phoenix, Inc. d/b/a Abrazo West Campus was and still is licensed and doing business in the State of Arizona, with a domestic address in Phoenix, Arizona and a foreign address in Dallas, Texas.   On information and belief, at all times material to the allegations of this Complaint, Hospital Development of West Phoenix, Inc. d/b/a Abrazo West Campus was also involved in and responsible for operations of the Abrazo West Campus hospital facilities in Goodyear, Arizona.

8.      On information and belief, Vanguard Health Management, Inc. and Hospital Development of West Phoenix, Inc. share responsibilities for and act in coordination in the operation of and overseeing the policies and practices of the Abrazo West Campus hospital facility.

9.      Abrazo West Campus is a place of public accommodation as defined in 42 U.S.C. § 12181(7)(G) and A.R.S. § 41-1492(11)(f) and, on information and belief, Vanguard Health

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

Management, Inc. and Hospital Development of West Phoenix, Inc. are recipients of federal financial assistance. Thus, they are subject to the requirements of the ADA, the Rehabilitation Act, the Patient Protection and Affordable Care Act and the AzDA.

10.   On information and belief, Vanguard Health Management, Inc. and Hospital Development of West Phoenix, Inc. have sufficient financial resources to afford all aids and services necessary to provide effective communication to the Plaintiffs.

11.   Plaintiffs Mark Tauscher and Ivanito Tauscher are married individuals who have at all material times hereto resided in Maricopa County, Arizona.  They are profoundly deaf, communicate primarily in ASL, and are substantially limited in the major life activities of hearing and speaking within the meaning of the ADA, the Rehabilitation Act, the Affordable Care Act, and the AzDA.  Plaintiff Mark Tauscher was a patient at Defendants' Abrazo West Campus facility, where he and his patient companion, Plaintiff Ivanito Tauscher, were denied appropriate auxiliary aids and services for their disabilities despite repeated requests to facilitate effective communication between them and Defendants' employees and staff during Mark Tauscher's medical treatment in May 2016.

## JURISDICTION & VENUE

12.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under Title III of the ADA, 42 U.S.C §§ 12181, et seq., as well as claims arising under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulation, 45 C.F.R. Part 84, and under Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 148116. This Court has supplemental jurisdiction over Plaintiff's state law claims under the AzDA pursuant to 28 U.S.C. § 1367.

13.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants have sufficient contacts with this District to subject them to personal jurisdiction at the time this action is commenced, and the acts and omissions giving rise to this Complaint occurred within this District.

///

///

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

## STATEMENT OF FACTS

14.     Plaintiff Mark Tauscher is deaf and requires a qualified sign language interpreter to communicate effectively in medical settings.

15.     Plaintiff Ivanito Tauscher is also deaf and requires a qualified sign language interpreter to communicate effectively in medical settings.

16.     Plaintiffs Mark and Ivanito Tauscher are married to each other. They have been married to each other since May 27, 2016. Prior to their marriage, Ivanito Tauscher's last name was Maldonado.

17.     On May 14, 2016, Mark and Ivanito went to an urgent care facility. Mark had some lab work done, and was told to immediately go to the hospital.  The urgent care facility recommended he go to an Abrazo hospital; however, his doctors are associated with Banner Health, so Mark Tauscher and Ivanito Tauscher went to Banner Estrella hospital immediately afterward. The following day, Mark Tauscher was still concerned about his health and decided to go to an Abrazo facility as the urgent care facility had recommended.

18.     On May 15, 2015 in the morning, the Tauschers called Abrazo West Campus through Video Relay Service (VRS) and informed the woman who answered (upon information and belief, she was the nursing supervisor and her name was Kathy) that they were on their way to the hospital and are deaf and would require a live sign language interpreter.  Kathy assured the Tauschers that Defendants would have a live sign language interpreter present and ready upon their arrival.  After speaking with Kathy, the Tauschers left their home to go to the Abrazo facility.

19.     When Mark and Ivanito arrived at Abrazo West Campus, no ASL interpreter was present.

20.     Plaintiffs inquired of a nurse about the interpreter. The nurse informed Plaintiffs that Defendants had not yet called an interpreter.

21.     Mark Tauscher filled out his registration paperwork and was taken to a screening room.

22.     Inside the screening room, no live sign language interpreter was present;

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

however, hospital staff attempted to use a VRI machine during Plaintiff Mark Tauscher's initial interactions with them. Three different nurses struggled to get the VRI connected unsuccessfully. Finally, a nurse took the VRI machine out of the room. The initial screening was conducted without the VRI and without a live ASL interpreter.

23.     During the first approximately three hours of Mark Tauscher's stay at Defendants' hospital, the VRI was not working at many points. Throughout this time, the Tauschers continued to request a qualified live sign language interpreter. Defendants denied their requests.

24.     The Tauschers then asked a nurse at Defendants' hospital to contact the interpreter licensing coordinator at the Arizona Commission for the Deaf and the Hard of Hearing in hopes that they would be able to assist in getting a live interpreter. Despite hearing from this official, the nurse indicated that the hospital intended to continue trying to utilize VRI.

25.     At some point during the stay, Defendants informed the Tauschers that they can only utilize an interpreter through a specific vendor with whom they have a contract. Defendants further indicated that they had reached out to the interpreter agency and did not get a response. Defendants further indicated that they were quoted a 6 to 12 hour wait time until a live interpreter would arrive. Even so, Defendants refused to contact any of the interpreting agencies suggested by the Tauschers.

26.     When the VRI would not work, Defendants brought in a nurse by the name of Paul who knew some sign language. When Paul came in, the nursing supervisor was in the room and was still attempting to set up the VRI. It became apparent to Mark Tauscher that Paul, the nurse, was not a sufficiently proficient signer. He asked Paul in sum and substance: are you a certified interpreter? Paul responded in sum and substance: no, but I'm here to help you.

27.     Mark Tauscher told Paul he was not comfortable with him interpreting and that he needed a qualified interpreter. Mark sensed that Paul became angry and, often he spoke with a nurse outside Plaintiffs' presence, he informed Mark Tauscher in sum and substance: we are going to discharge you because we can't find an interpreter and you won't use the VRI. At that time, the VRI was not working.

7

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

28.     Mark signed to Paul, in sum and substance: no, I'm worried about my health, I want you to check me out. Mark and Ivanito both observed that Paul did not voice to the nurse supervisor when/after Mark was signing despite the fact that Paul was supposed to be acting as an interpreter. Paul signed to Mark, in sum and substance: no, we are going to discharge you. This exchanged happened twice and both times Paul failed to voice Mark's request to be examined for the nurse supervisor.

29.     Paul and the nurse supervisor then gave the Tauschers discharge paperwork and again indicated in sum and substance: we are sorry, we are discharging you. They then asked the Tauschers to leave. Mark and Ivanito observed Paul putting notes into the hospital system at that time. The Tauschers refused to leave without receiving medical care.

30.     The Tauschers asked the nurse supervisor to remove Paul from the room. After Paul was removed from the room, the nurse supervisor finally was able to get the VRI to work. Even after the VRI turned on, the nurse supervisor struggled for several minutes to use the VRI.

31.     Finally, the nurse supervisor was able to use the VRI to communicate with Mark and Ivanito, and Mark was finally able to communicate concerns to the nurse. The doctor then came in and utilized the VRI to communicate with Mark and Ivanito. During use of the VRI there were still occasional transmission issues and Ivanito had to provide interpreting at points to help Mark.

32.     Over the next two hours, Mark had a CT scan, x-ray and blood work done.

33.     When Mark was taken to the room for the CT scan, Defendants did not bring the VRI machine with him into the room. There was no VRI in the room where the CT scan was conducted and there was no live interpreter. Therefore, Mark did not have an opportunity for effective communication during this process.

34.     When Mark was taken to the room for the x-ray, Defendants did not bring the VRI machine with him into the room. There was no VRI in the room where the x-ray was conducted and there was no live interpreter. Therefore, Mark did not have an opportunity for effective communication during this process.

35.     When Mark was taken to the room for the blood work, Defendants did not bring

the VRI machine with him into the room. There was no VRI in the room where the blood work was conducted and there was no live interpreter. Therefore, Mark did not have an opportunity for effective communication during this process.

36.     Upon information and belief, Defendants were aware of Plaintiffs' obvious disabilities.

37.     Defendants' staff failed to undertake any meaningful assessment of Plaintiffs' communication needs and abilities.

38.     Defendants' staff never asked Plaintiffs about their communication preference.

39.     As alleged above, Plaintiffs repeatedly put Defendants' staff on notice that communication was not effective by alerting them of the inadequacy of VRI systems and to their need for qualified ASL interpreters. Yet, despite such notice, Defendants failed and/or refused to provide qualified onsite ASL interpreters, failed and/or refused to ensure that VRI systems were appropriate for each of the Plaintiffs' circumstances, failed and/or refused to ensure that available VRI systems were properly functioning, and failed and/or refused to ensure that the Defendants' agents were properly trained and qualified in the use of the VRI systems.

40.     Rather, when the VRI system was not working or was unavailable, Defendants knowingly limited Plaintiffs to the little communication the Plaintiffs could achieve through vague gestures, cryptic notes, and the few words Plaintiffs could understand through reading lips.

41.     Defendants intentionally discriminated against Plaintiffs with deliberate indifference to their rights and to their communication needs, causing Plaintiffs to endure humiliation, fear, anxiety, pain, suffering, and emotional distress.

42.     Further, Defendants retaliated against and punished Plaintiffs for attempting to enforce their rights by attempting to send Plaintiffs away from their facility without medical care.

43.     Upon information and belief, Defendants are aware of their obligations under federal and state law to provide adequate and effective communication for the deaf, hard of

9

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

hearing, and speech unintelligible individuals that visit their medical facilities as either patients or companions of patients.

44.     Upon information and belief, Defendants refuse or fail when required to hire qualified on-site sign language interpreters as a matter of policy at their hospital and other facilities, and insist upon communication through such inadequate means of communication as handwritten notes, gestures, lip reading, and/or VRI, regardless of whether such means are appropriate for the deaf individual involved.

45.     As a result of Defendants' failure to ensure effective communication with Plaintiffs, Plaintiffs received care and service that was objectively substandard and that is both different from and inferior to care provided to patients and patient family members who can hear, and Plaintiffs were subjected to discriminatory treatment because of their disability.

46.     It is reasonably foreseeable that each Plaintiff will continue to visit one or more of Defendants' facilities, either by choice or necessity, due to the proximity of Defendants' medical facilities to their home and their need for medical treatment. Based on Defendants' previous and repeated denials of effective communication for Plaintiffs, it is reasonably foreseeable that a denial of effective communication for Plaintiffs as a result of Defendants' actions, omissions, policies or practices will occur again. Accordingly, Plaintiffs are aware of discriminatory barriers to access at Defendants' facilities and are thereby deterred from accessing Defendants' healthcare services because of the discrimination they have faced and expect to face in the future, even though they would do so if the discriminatory acts ceased. Therefore, Defendants' actions warrant the imposition of injunctive relief to ensure the cessation of Defendants' wrongful conduct.

## COUNT 1: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

47.     Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

48.     At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, *et seq.* has been in full force and effect and has applied to Defendants' conduct.

49.     At all times relevant to this action, the United States Department of Justice

regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to the Defendants' conduct.

50.     At all times relevant to this action, Plaintiffs have been substantially limited in the major life activities of hearing and speaking. Accordingly, Plaintiffs are considered individuals with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

51.     Defendants own, lease, and/or operate places of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

52.     Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

53.     Title III of the ADA defines discrimination to include denying participation or offering unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A); *see also* 28 C.F.R. §§ 36.202.

54.     Title III of the ADA further defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

55.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and services to ensure effective communication with individual with disabilities. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(b)(1).

56.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation, in choosing the type of auxiliary aid or service to ensure effective communication, must consider the "method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1)(ii).

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

57.     Pursuant to Title III of the ADA and its implementing regulations, in order to be effective, the type of auxiliary aid or service provided by the public accommodations "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

58.     Pursuant to Title III of the ADA and its implementing regulations, when a public accommodation provides VRI service, it must ensure that the service includes all the following criteria: "(1) [r]eal-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2) [a] sharply delineated image that is large enough to display the interpreter's face, arms, hands, and fingers, and the participating individual´s face, arms, hands, and fingers, regardless of his or her body position; (3) [a] clear, audible transmission of voices; and (4) [a]dequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI." 28 C.F.R. § 36.303(f).

59.     Based on all of the foregoing allegations, Defendants discriminated against Plaintiffs on the basis of Plaintiffs' disabilities by: (1) denying Plaintiffs an equal opportunity to participate in and benefit from Defendants' goods, services, facilities, privileges, advantages, and/or accommodations, in violation of 42 U.S.C. § 12182(b)(1)(A); (2) failing to ensure adequate and effective communication through the provision of on-site, qualified ASL interpreters, in violation of 42 U.S.C. § 12182(b)(2)(A); (3) failing to ensure adequate and effective communication by relying on a VRI system, including a system that was not fully or adequately functioning, or other means of communication other than qualified ASL interpreters; (4) excluding or otherwise denying equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to Plaintiffs because of the known disability of an individual with whom the individual or entity is known to have a relationship or association, in violation of 42 U.S.C. § 12182(b)(1)(E); and (5) failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

with disabilities, in violation of 42 U.S.C. § 12182(b)(2)(A)

60.     As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiffs, Plaintiffs' family members and/or companions and/or additional deaf or hearing impaired persons.

61.     Plaintiffs are therefore entitled to injunctive relief, as well as an award of attorney's fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## COUNT 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

62.     Plaintiffs repeat and re-allege all preceding paragraphs in support of this claim.

63.     At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 has been in full force and effect and has applied to the Defendants' conduct.

64.     At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to the Defendants' conduct.

65.     At all times relevant to this action, Plaintiffs have had substantial impairment in the major life activities of hearing and speaking within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9), and its implementing regulations at 45 C.F.R. § 84.3(j). Accordingly, Plaintiffs are individuals with a disability as defined under the Rehabilitation Act.

66.     At all times relevant to this action, Plaintiffs were qualified to receive services through Defendants' facilities.

67.     Upon information and belief, at all times relevant to this action Defendants have received federal financial assistance, including Medicaid reimbursements, and have been principally engaged in the business of providing health care. Therefore, Defendants and their associated medical facilities qualify as programs or activities receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

68.     Pursuant to Section 504, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving

Federal financial assistance." 29 U.S.C. § 794.

69.     The Rehabilitation Act permits associational claims by extending relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

70.     As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendants and their agents and medical personnel operating within their facilities, Defendants have discriminated against and continue to discriminate against Plaintiffs solely on the basis of the disabilities of Plaintiffs by denying Plaintiffs meaningful access to the services, programs, and benefits the Defendants offer to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

71.     As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendants and its agents and medical personnel operating within their facilities, Defendants further discriminated against the Plaintiffs by: 1) failing to ensure adequate and effective communication with Plaintiffs through the specific provision of qualified, in-person ASL interpreters; 2) failing to ensure adequate and effective communication with the Plaintiffs through a VRI system that functioned properly; and 3) requiring the Plaintiffs to rely upon ineffective and inadequate means of communication including a VRI system, which was at times malfunctioning, handwritten notes and/or lip reading.

72.     Defendants' violation of their obligations and the Plaintiffs' rights under the Rehabilitation Act and its implementing regulations has caused substantial damages, suffering, loss and harm to the Plaintiffs, including, without limitation, serious and lasting emotional harm, anxiety, frustration, fear and other serious emotional conditions or symptoms, as well as the exacerbation, increase, extension, or delay in the resolution of serious medical conditions, which itself has also caused additional harm, suffering and injury to such Plaintiffs.

73.     As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur again with Plaintiffs, Plaintiffs' family members and/or companions and/or additional deaf or hearing impaired persons.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

74.    Plaintiffs are therefore entitled to seek and recover all appropriate compensatory damages for the injuries and losses Plaintiffs sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

75.    Plaintiffs are further entitled to an award of attorney's fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

76.    Defendants' actions and omissions resulting in harms to the Plaintiffs were willful, malicious, intentional, recklessly indifferent and undertaken with an evil mind and motive and with disregard for and deliberate indifference to the legal rights of Plaintiffs under federal and state law and the substantial risk of serious and material harms to the Plaintiffs.

## COUNT 3: VIOLATIONS OF THE ARIZONANS WITH DISABILITIES ACT

77.    Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

78.    At all times relevant to this action, the Arizonans with Disabilities Act (AzDA), A.R.S. § 41-1492, *et seq.*, has been in full force and effect and has applied to Defendants' conduct.

79.    At all times relevant to this action, Plaintiffs had substantial impairment in the major life activities of hearing and speaking and have been individuals with a disability within the meaning of the AzDA, A.R.S. §§ 41-1492(6) and (8)(a).

80.    At all times relevant to this action, Defendants' facilities at which Plaintiffs were served or treated have been places of public accommodation within the meaning of AzDA, A.R.S. § 41-1492(11).

81.    At all times relevant to this action, Plaintiff Ivanito Tauscher has had a familial relationship with Plaintiff Mark Tauscher under A.R.S. §41-1492.02(F).

82.    The AzDA, A.R.S. § 41-1492.02(A), states that "[n]o individual may be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases, leases to others or operates a place of public accommodation."

83.    Discrimination under the AzDA includes any "failure to take such steps as may

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

15

be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of reasonable modifications in policies, practices or procedures or auxiliary aids and services." A.R.S. § 41-1492.02(G)(3).

84.   Discrimination under the AzDA also includes exclusion or denial or "equal goods, services, facilities, privileged, advantages, accommodations or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." A.R.S. §41-1492.02(F).

85.   As set forth in the foregoing allegations about the Plaintiff's treatment by and interactions with Defendants and their agents and medical personnel operating within their facility, Defendants have discriminated against and continue to discriminate against the Plaintiffs solely on the basis of the disability of Plaintiffs by denying Plaintiffs meaningful access to the services, programs, and benefits the Defendants offer to other individuals, by failing and refusing to modify the Defendants' policies, procedures and practices regarding reliance on VRI systems and refusal to provide live, on-site ASL interpreters, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of the AzDA and the Plaintiffs' rights thereunder.

86.   As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendants and their agents and medical personnel operating within their facility, Defendants specifically discriminated against the Plaintiffs by: 1) failing to ensure adequate and effective communication with Plaintiffs through the specific provision of qualified, in-person ASL interpreters; 2) failing to ensure adequate and effective communication with the Plaintiffs through a VRI system that functioned properly; and 3) requiring the Plaintiffs to rely upon ineffective and inadequate means of communication including a VRI system, which was at times malfunctioning, handwritten notes, finger spelling and/or lip reading.

87.   Discrimination under the AzDA also includes, "[a] failure to make reasonable modifications in policies, practices or procedures, if these modifications are necessary to afford

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

these goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making these modifications would fundamentally alter the nature of these goods, services, facilities, privileges, advantages or accommodations." A.R.S. § 41-1492.02(G)(2)

88.     Upon information and belief, Defendants have a policy, practice or procedure of using VRI for deaf patients and of refusing to provide deaf patients with live, qualified, on-site ASL interpreters except in discrete situations.

89.     As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendants and their agents and medical personnel operating within their facilities, Plaintiffs requested reasonable accommodations to Defendants' VRI policy and/or Defendants had reason to know of Plaintiffs' disabilities and inability to request an accommodation; Plaintiffs needed a reasonable accommodation; and Defendants denied Plaintiffs a reasonable accommodation, which resulted in Plaintiffs being harmed.

90.     Defendants' violation of its obligations and the Plaintiffs' rights under the AzDA has caused substantial damages, suffering, loss and harm to the Plaintiffs, including, without limitation, serious and lasting emotional harm, anxiety, frustration, fear and other serious emotional conditions or symptoms, as well as the exacerbation, increase, extension, or delay in the resolution of serious medical conditions, which itself has also caused additional harm, suffering and injury to Plaintiffs.

91.     As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiffs, Plaintiffs' family members and/or companions and/or additional deaf or hearing impaired persons.

92.     Plaintiffs are therefore entitled to seek and recover all appropriate compensatory damages and injunctive relief for the injuries and losses Plaintiffs sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, including as allowed pursuant to A.R.S. § 41-1492.09.

93.     Plaintiffs are further entitled to an award of attorneys' fees, costs, and disbursements pursuant to A.R.S. § 41-1492.09 and/or as otherwise provided at law.

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

**COUNT 4:  VIOLATIONS UNDER AFFORDABLE CARE ACT SECTION 1557**

94.     Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

95.     At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 was in full force and effect and applied to the Defendants' conduct.

96.     At all times relevant to this action, Section 1557, 42 U.S.C. § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

97.     At all times relevant to this action, Plaintiffs had substantial limitations to the major life activity of hearing and speaking, and were individuals with disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 U.S.C. § 18116.

98.     At all times relevant to this action, such Plaintiffs' primary language for communication was American Sign Language and not English; and such Plaintiffs had limited ability to read, write, speak, or understand English, and were individuals with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

99.     On information and belief, at all times relevant to this action, Defendants received federal financial assistance, including Medicaid reimbursements, and were principally engaged in the business of providing health care. Therefore, Defendants are, on information and belief, health programs or activities receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

100.    Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 U.S.C. § 18116.

101.    Defendants have discriminated and continue to discriminate against Plaintiffs solely on the basis of their disabilities and their limited English proficiency by denying them meaningful access to the services, programs, and benefits the Defendants offer to other

individuals by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1557, 42 U.S.C. § 18116.

102.    Defendants discriminated against Plaintiffs by failing to ensure effective communication through the providing of qualified sign language interpreters on-site and/or through VRI machines that worked.

103.    On information and belief, the refusal to offer qualified on-site ASL interpreter services is as a result of a policy or practice of Defendants to prohibit or impede the use of on-site qualified sign language interpreters without regard to whether VRI services will provide effective communication.

104.    As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur again with Plaintiffs and other Deaf patients and/or family members.

105.    Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

106.    Plaintiffs are further entitled to an award of attorneys' fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court grant the following relief against the Defendants:

A.    Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' practices, policies and procedures have subjected Plaintiffs to discrimination in violation of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the Arizonans with Disabilities Act;

B.    Enter permanent injunctive relief enjoining Defendants from implementing or enforcing any policy, procedure, or practice that denies individuals who are deaf

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

or hard of hearing, such as Plaintiffs, meaningful access to and full and equal enjoyment in Defendants' services or programs;

C.  Enter permanent injunctive relief ordering Defendants:

i.  to develop and comply with written policies, procedures, and practices to ensure that Defendants do not discriminate in the future against Plaintiffs and other similarly situated individuals who are deaf or hard of hearing or companions of deaf or hard of hearing persons by failing to provide effective communication;

ii.  to develop, promulgate, implement and comply with a policy requiring that when a patient or other deaf individual appearing as a companion or family member, or other person for a patient requests an on-site interpreter for effective communication, a fully qualified, on-site sign language interpreter will be provided as soon as practicable in all services offered by Defendants;

iii.  to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their rights to effective communication under all applicable federal and state law. This notification will include posting explicit and clearly worded notices that Defendants will provide live sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iv.  to develop, implement, promulgate, and comply with a policy to ensure, in the event any facility operated by Defendants utilizes a Video Remote Interpreting System ("VRI"), that such system has all functions and characteristics necessary to ensure it provides for effective communication given all the conditions and circumstances present, including without limitation that such system utilizes  1) a  high-speed Internet connection; 2) a video screen and camera with appropriate size, resolution, position,

capture angle, focus, and proximity to the deaf individual; and 3) appropriate audio quality. When necessary for effective communication the equipment must be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v.   to provide at all times and at all Defendants' medical facilities utilizing VRI systems adequately trained and experienced employees or contractors sufficient to ensure that any VRI systems or related communications equipment or resources are maintained at all times in proper working condition and can be promptly fixed in time to avoid any prejudice or unreasonable delay in patient care or companion communication;

vi.   to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard-of-hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

vii.   to create and maintain a list of qualified American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

viii.   to train all their employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the AzDA;

ix.   to train all their employees, staff, and other agents on a regular basis about how to properly assess when VRI or other alternative means of communication do not provide effective communication for a deaf patient or other deaf and hard of hearing companions or visitors to the Defendants' facilities;

x.   to train their employees, staff, and other agents on a regular basis about

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

Defendants' policies regarding when and how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when requested by deaf or hard of hearing patients or companions;

D.     Award to Plaintiffs:

    i.     compensatory damages pursuant to Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the Arizonans with Disabilities Act sufficient to fully remedy all damages, suffering, injury and losses caused to Plaintiffs by Defendants;

    ii.     to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish the Defendants and to deter similarly situated persons or entities from similar future conduct;

    iii.     reasonable costs and attorneys' fees pursuant to the ADA, Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, and the AzDA;

    iv.     interest on all amounts at the highest rates and from the earliest dates allowed by law; and

    v.     any and all other relief that this Court finds just, necessary and appropriate.

## **JURY DEMAND**

Plaintiffs demand trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

RESPECTFULLY SUBMITTED this 28th day of December, 2017.

BASKIN RICHARDS PLC

/s/ William A. Richards
William A. Richards
Alan S. Baskin
David E. Wood
2901 N. Central Avenue, Suite 1150
Phoenix, AZ 85012

AND

EISENBERG & BAUM, L.L.P.
Eric Baum, Esq.
Andrew Rozynski, Esq.
24 Union Square East
Fourth Floor
New York, NY 10003

*Attorneys for Plaintiffs*

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800